IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA *ex rel* STEVE KAROL, | § § § | |
| Plaintiff, | § § | |
| v. | § § | Civil Action No. 3:10-cv-339-O |
| L-3 COMMUNICATIONS VERTEX AEROSPACE, LLC, | § § § | |
| Defendant. | § § | |

## JURY CHARGE

Members of the Jury:

You have now heard the evidence in this case. It is my duty to give you the final instructions of the Court concerning the law that you are to apply to this case. The law contained in these instructions is the only law you may follow. It is your duty as jurors to follow the law as stated in these instructions and to apply that law to the facts as you find them from the evidence presented to you. On these legal matters, you must take the law as I give it to you. If any attorney or witness has stated a legal principle different from any that I state to you in these instructions, it is my instructions that you must follow. You are not to single out one instruction alone as stating the law, but must consider the instructions as a whole, and are to regard each instruction in the light of all the others. You may not follow some and ignore others. Neither are you to be concerned with the wisdom of any rule of law that I state.

From time to time throughout these instructions I will refer to Relator as Mr. Karol or Relator and to Defendant as L-3 Vertex or Defendant.

During the course of the trial you received all the evidence you may properly consider to decide the case. Your decision in this case must be made solely on the evidence presented at trial. While you should consider only the evidence in the case, you are permitted to draw such reasonable inferences from the testimony and exhibits as you feel are justified in light of common experience. In other words, you may make deductions and reach conclusions which reason and common sense lead you to draw from the facts which have been established by the evidence in the case.

Do not allow sympathy or prejudice to influence you. The law demands of you a just verdict, unaffected by anything except the evidence, your common sense, and the law as I give it to you. You should not take anything I said or did during the trial as an indication of what I think of the evidence or what I think your verdict should be.

Do not let bias, prejudice or sympathy play any part in your deliberations. A corporation and all other persons are equal before the law and must be treated as equals in a court of justice.

The Relator has the burden of proving this case by a preponderance of the evidence. To establish by a preponderance of the evidence means to prove something is more likely so than not so. If you find that Relator has failed to prove any element of a claim in this case by a preponderance of the evidence, then there shall be no recovery on that claim.

The evidence you are to consider consists of the testimony of the witnesses, the documents and other exhibits admitted into evidence, any facts that have been stipulated, anything of which I took judicial notice, and any fair inferences and reasonable conclusions you can draw from the facts and circumstances that have been proven. The exhibits will be sent into the jury room with you when you begin to deliberate. You should examine the exhibits when you think it will help you in your deliberations.

A "stipulation" is an agreement. When there is no dispute about certain facts, the attorneys may agree or "stipulate" to those facts. You must accept a stipulated fact as evidence and treat that fact as having been proven here in court. Additionally, a court may take judicial notice of certain facts or events. If I declared that the court was taking judicial notice of some fact or event, you must accept the court's declaration as evidence and treat that fact or event as having been proven.

Generally speaking, there are two types of evidence. One is direct evidence, such as testimony of an eyewitness. The other is indirect or circumstantial evidence. Circumstantial evidence is evidence that proves a fact from which you can logically conclude another fact exists. For example, if someone tells you "I was just outside, and it is raining," that is direct evidence that it is raining. If someone walks into the room carrying a wet umbrella, that is indirect or circumstantial evidence that it is raining. As a general rule, the law makes no distinction between direct and circumstantial evidence, but simply requires that you find the facts from all of the evidence, both direct and circumstantial.

Certain things are not evidence. I shall list those things for you now:

Statements, arguments, questions and comments made by lawyers or me are not evidence. If counsel or I made any comments or statements concerning the evidence which you find are not warranted by the evidence, you should wholly disregard them and rely on your own recollections or observations.

Objections are not evidence. Lawyers have a right to object when they believe something is improper. You should not be influenced by any objections. If I sustained an objection to a question, you must ignore the question and must not try to guess what the answer might have been.

Testimony that I struck from the record, or told you to disregard, is not evidence and must not be considered.

Anything you saw or heard about this case outside the courtroom is not evidence.

Further, if you were instructed that testimony or an exhibit was admitted for a limited purpose only, you may consider that testimony or exhibit only for the specific limited purpose for which it was admitted. For example, evidence of a party or person's character or character trait is not admissible to prove that on a particular occasion the person acted in accordance with the character or trait; however, this evidence may be used for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident.

I may have asked questions of witnesses during the trial. I asked those questions so that the testimony will be clear. Any questions I asked do not reflect any opinion that I may have about the facts of the case.

The fact that the Mr. Karol brought a lawsuit and is in court seeking damages creates no inference that he is entitled to a judgment. Anyone may make a claim and file a lawsuit. The act of making a claim in a lawsuit, by itself, does not in any way tend to establish that claim and is not evidence.

Similarly, the fact that L-3 Vertex has denied Mr. Karol's allegations and has asserted defenses to Mr. Karol's claims creates no inference that it is entitled to a finding in its favor. Any corporation may deny allegations asserted against it and may assert defenses to claims filed against it. The act of denying allegations or asserting defenses, by themselves, do not in any way tend to establish those denials or defenses and are not evidence.

You are the sole judges of the credibility of the witnesses and the weight their testimony deserves. You may be guided by the appearance and conduct of a witness, or by the manner in

which a witness testified, or by the character of the testimony given, or by evidence contrary to the testimony.

You should carefully examine all the testimony given, the circumstances under which each witness has testified, and every matter in evidence tending to show whether a witness is worthy of belief. Consider each witness's intelligence, motive and state of mind, and demeanor or manner while testifying.

Consider the witness's ability to observe the matters as to which the witness has testified, and whether the witness impressed you as having an accurate recollection of these matters. Also, consider any relation each witness may have with either side of the case, the manner in which each witness might be affected by the verdict, and the extent to which the testimony of each witness is either supported or contradicted by other evidence in the case.

Inconsistencies or discrepancies in the testimony of a witness, or between the testimony of different witnesses may or may not cause you to discredit such testimony. In determining the weight to give to the testimony of a witness, consider whether there was evidence that at some other time the witness said or did something, or failed to say or do something, that was different from the testimony given at the trial. A simple mistake by a witness does not necessarily mean that the witness did not tell the truth as he or she remembers it. People may forget some things or remember other things inaccurately. If a witness made a misstatement, consider whether that misstatement was an intentional falsehood or simply an innocent mistake. The significance of that may depend on whether it has to do with an important fact or with only an unimportant detail.

After making your own judgment, you will give the testimony of each witness such weight, if any, that you may think it deserves. In short, you may accept or reject the testimony of any witness, in whole or in part.

You may find the testimony of one witness or a few witnesses more persuasive than the testimony of a larger number of witnesses. You need not accept the testimony of the larger number of witnesses.

When knowledge of technical subject matter may be helpful to the jury, a person who has special training or experience in that technical field is permitted to state his or her opinion on those technical matters. However, you are not required to accept that opinion. As with any other witness it is up to you to decide whether to rely on it.

In deciding whether to accept or rely upon the opinion of such a witness, you may consider that witness's qualifications, his or her opinions, the reasons for testifying, such as any bias of the witness, including any bias you may infer from evidence that the witness has been or will be paid for reviewing the case and testifying, or from evidence that he or she testifies regularly and his or her income from such testimony represents a significant portion of his or her income, as well as all of the other considerations that ordinarily apply in assessing the credibility of witnesses.

In addition to the considerations that you use in assessing any witness's testimony, factors that may bear on your assessment of the weight and credibility of an expert witness's testimony include: whether the witness has sufficient qualifications in the relevant field, whether the witness's testimony is based on sufficient facts or data, whether the testimony is the product of reliable principle and methodology, and whether the witness has applied the principles and methods to the facts of the case. If you conclude that the opinions and inferences of an expert are not based on sufficient knowledge, skill, experience, training or education; the reasons given in support of his or her views are unsound; or that the expert testimony is outweighed by other evidence, you may discount or disregard that testimony.

The usefulness or weight of statistical evidence depends on all the surrounding facts and circumstances. They are not irrefutable, and, like any other kind of evidence, they may be rebutted. Like any other type of evidence, statistical evidence must not be accepted uncritically. You should give the statistical evidence presented in this case the weight and value you think it deserves.

In considering whether or not to give weight to statistical evidence or to a witness's opinion about such evidence, you should consider whether or not the witness is qualified to prepare, apply or interpret statistics; whether he has controlled for variables that could affect the reliability of his analysis; and whether there is a gap between the underlying data and the opinion proffered. If you find that statistics are unreliable or that they reflect only a witness's subjective belief or unsupported guess work or speculation, you should disregard them.

Certain charts and summaries have been shown to you solely to help explain or summarize the facts disclosed by the books, records, and other documents that are in evidence. These charts and summaries are not evidence or proof of any facts. You should determine the facts from the evidence.

It is for you to determine the accuracy of the charts and summaries. You are entitled to consider the charts, schedules and summaries if you find that they are of assistance to you in analyzing the evidence and in understanding the evidence.

Certain testimony has been presented to you through a deposition. A deposition is the sworn, recorded answers to questions asked a witness in advance of trial. Under some circumstances, if a witness cannot be present to testify from the witness stand, that witness' testimony may be presented, under oath, in the form of a deposition. Sometime before trial, attorneys representing the parties in this case questioned the witness under oath. A court reporter was present and recorded the testimony, and a videotape may have been made of the testimony.

This deposition testimony is entitled to the same consideration as if the witness had been present and had testified from the witness stand in court.

Mr. Karol alleges that L-3 Vertex violated two provisions of the False Claims Act in Section 3729(a). First, Mr. Karol alleges L-3 Vertex knowingly made, used or caused to be made or used a false record or statement to get a false or fraudulent claim paid or approved by the Government. Specifically, Mr. Karol claims that L-3 Vertex made false records by instructing its helicopter mechanics in Afghanistan and Iraq to record 84 hours of work per week, even when they had not performed 84 hours of work as defined by the relevant contracts.

Second, Mr. Karol claims that L-3 Vertex violated the False Claims Act because it knowingly presented, or caused to be presented, to an officer or employee of the United States Government, a false or fraudulent claim for payment or approval. Specifically, Mr. Karol alleges that L-3 Vertex submitted claims for payment to the United States for hourly wages for L-3 Vertex's helicopter mechanics, which included time that was not properly chargeable to the United States under the terms of its contracts with L-3 Vertex.

L-3 Vertex denies Mr. Karol's allegations against it. First, L-3 Vertex contends that the contracts authorized the Army to direct the L-3 Vertex employees to be available on site to work and to bill the Government for 84 hours per week, which the Army did. It claims that the Government expected L-3 Vertex mechanics to stay on-the-clock throughout this time and to be paid while they were there; that the Army controlled L-3 Vertex's work schedule; and that L-3 Vertex employees had no discretion to clock out without Army permission.

Second, L-3 Vertex contends that the Government knew, reviewed, and approved the hours L-3 Vertex mechanics billed under the contracts.

Third, L-3 Vertex contends that the way in which it categorized its employees' time (as productive, non-productive, or project support) was not material to the Government's decision to pay because all categories of time were billable at the same rate regardless of how it was labeled.

In order to prove a violation of Section 3729(a)(1)(B) of the False Claims Act under these provisions, Mr. Karol must prove each of the following elements, by a preponderance of the evidence:

1. L-3 Vertex knowingly made or used or caused to be made or used;

2. a false record or statement;

3. to get a false or fraudulent claim paid or approved by the United States; and

4. the false record or statement was material to the United States' decision to pay or approve the claim.

Mr. Karol also alleges that L-3 Vertex violated Section 3729(a)(1)(A) of the False Claims Act by knowingly presenting or causing to be presented a false or fraudulent claim to the United States seeking payment of money. L-3 Vertex denies Mr. Karol's allegations. In order to prove a violation of Section 3729(a)(1)(A) of the False Claims Act, Mr. Karol must prove each of the following elements, by a preponderance of the evidence:

1. L-3 Vertex presented or caused to be presented to an officer or employee of the United States a claim for payment or approval;

2. The claim was false or fraudulent;

3. L-3 Vertex knew that the claim was false or fraudulent; and

4. the falsity of the claim was material to the United States' decision to pay or approve the claim.

A "claim" includes any request or demand, whether under a contract or otherwise, for money or property that is made by a contractor, grantee or other recipient if the United States provides any portion of the money or property that is requested or demanded.

A "claim" may include a form, invoice, or other application for the payment of Government money, the number of facilities at which false claims originated, or the number of times the Government is actually falsely induced to take action it otherwise would not. You are instructed that although an application for Government funds (such as an invoice) may constitute a claim, each piece of underlying documentation is not a separate claim.

A claim is "false" when it is an assertion that is untrue when made or when used. A claim is "fraudulent" if it is an assertion that is known to be untrue.

In order for there to be liability under the False Claims Act for making or using, or causing another to make or use, false records or statements, the false statements or records must be "material" to payment. A material record or statement is one which has a natural tendency to influence someone to act or is capable of influencing someone to act.

If you find that some L-3 Vertex employees submitted time based on their innocent misunderstandings of what the contracts required, the fact that their interpretations were incorrect is not sufficient to show that the Defendant made knowingly false statements. Acts which amount to a breach of contract alone do not constitute a false claim for payment.

Knowingly for purposes of this case means that L-3 Vertex, with respect to the alleged conduct:

(i) had actual knowledge of the information; or

(ii) acted in deliberate ignorance of the truth or falsity of the information; or

(iii) acted in reckless disregard of the truth or falsity of the information.

L-3 Vertex is a corporation. Corporations can obtain knowledge through their directors, officers, employees, or agents. An employee's knowledge of falsity is imputed to the employee's employer when the employee was acting in the course of employment and for the benefit of the

employer.

"Deliberate ignorance" means that the Defendant deliberately closed its eyes to what would otherwise have been obvious to it. Knowledge on the part of the Defendant cannot be established merely by demonstrating that the Defendant was negligent or careless. Knowledge may be inferred if the Defendant deliberately blinded itself to the existence of a fact.

"Reckless disregard" means that the Defendant recklessly disregarded information showing a claim, statement or record to be false or fraudulent. Reckless disregard is an extreme departure from the standards of ordinary care and involves carelessness approaching indifference.

Proof by a preponderance of the evidence of any one of the above choices is enough for Relator to meet his burden to show that L-3 Vertex acted "knowingly." However, knowledge as to a single instance of conduct does not necessarily mean that the Defendant had knowledge as to other similar instances.

In determining whether the Defendant knowingly submitted fraudulent and material claims, you may consider the Defendant's interactions with the Government. L-3's belief that the Government knew of, and failed to object to, the facts and circumstances surrounding the Defendant's submissions may go to show that the Defendant did not submit a claim with actual knowledge or in deliberate ignorance or reckless disregard of the truth.

I will now instruct you on the proper measure of damages, if any, that you may award. You should not interpret the fact that I have given instructions about damages as an indication in any way that I have any opinion about the merits favoring one side or the other.

You may only award those actual damages, if any, sustained by the United States, which were caused by L-3 Vertex's alleged conduct. The appropriate measure of damages resulting from a violation of the False Claims Act is the difference, if any, between what the United States actually

paid on knowingly false or fraudulent claims and what it would have paid had it been fully aware of what services were actually rendered. Stated another way, the measure of damages is that portion, if any, of the amount paid by the United States over and above what it would have paid if the claim was not knowingly false or fraudulent, or if the record or statement was not false.

Damages are not uncertain simply because the evidence does not permit you to calculate them with absolute exactness. Mr. Karol must show the amount of the actual damages sustained by the United States with reasonable certainty. Proof with mathematical precision is not required, but speculation and conjecture cannot form the basis of recovery.

Finally, you are instructed that there may be no recovery for violations, if any, accruing before February 19, 2004, because any claims submitted before that date, are barred by the statute of limitations. Those are the instructions you must follow in conducting your deliberations.

If you find by a preponderance of the evidence that L-3 Vertex is liable under the False Claims Act, you must specify the number of knowingly fraudulent and material claims it submitted to the United States for payment. If you find that L-3 Vertex knowingly submitted more than one fraudulent and material claim for payment, each such claim for payment constitutes a separate violation of the False Claims Act. However, multiple entries on a single invoice should be counted as one claim. It is your duty to determine whether L-3 Vertex violated the False Claims Act as to each claim alleged. There will be a space in the verdict form for you to place this number should you find against L-3 Vertex.

Relator also alleges that Defendant made false claims by inducing the Government to employ more mechanics than necessary. For purposes of this theory, the number of "false claims," if any, equals the number of times the Government actually relied upon false information to set manning levels.

Mr. Karol alleges that L-3 Vertex violated the False Claims Act by knowingly presenting or causing to be presented materially false or fraudulent claims, or making or using false records or statements to get false or fraudulent claims paid or approved by the United States, by billing for its employees' time in violation of contractual requirements.

In interpreting what was required under the relevant contracts, or what was reasonable under the relevant contracts, you may consider the parties' consistent course of conduct in dealing with each other as the contract was being performed. In other words, the parties' consistent course of performance over the course of a contract can demonstrate their mutual understanding of a particular term in their agreement, or of what was permitted under the agreement. The parties' course of dealing in performing under the contract may be considered as an indication of the construction that the parties themselves put on the crucial terms in the contract. This is because the parties to an agreement know best what they meant, and their action is often the strongest evidence of their meaning. It may also bear on your assessment of whether the Defendant's claims were "knowingly" false or fraudulent.

Mr. Karol has brought this case on behalf of the United States. The United States is the real party in interest. Under the False Claims Act, Mr. Karol is entitled to receive a percentage of whatever amount, if any, you award to the United States. After you reach a verdict, I will make the final determination of how much money Mr. Karol receives, but, if there is an award, the bulk of it will go to the United States. You may consider Mr. Karol's interest in this case only in determining whether he has testified truthfully.

It is your duty as jurors to consult with one another and to deliberate with a view to reach a verdict. You must each decide the case for yourself, but only after an impartial consideration of the evidence in the case with your fellow jurors. In the course of your deliberations, do not hesitate

to reexamine your own opinions and change your mind if you become convinced that you are wrong. But do not give up your honest beliefs because the other jurors think differently, or just to finish the case.

Upon retiring to the jury room, you will select someone to act as your foreperson. The foreperson will preside over your deliberations and will be your spokesperson in Court. A verdict form has been prepared for you to use. You will take this form into the jury room. The verdict must be unanimous. When you have reached a verdict, you will have your foreperson fill in the verdict form with respect to each issue on which you unanimously agree. Answer each question from the facts as you find them. The foreperson will then date the form and sign it with his or her name and jury number. You will then return to the courtroom with your verdict.

If you want to communicate with me at any time, please give a written message or question to the Court Security Officer, who will bring it to me. I will then respond as promptly as possible either in writing or by having you brought into the courtroom so that I can address you orally. I will first disclose to the attorneys your question and my response before I answer your question.

After you have reached a verdict, you are not required to talk to anyone about the case unless the Court orders otherwise. Remember that in a very real way you are the judges—judges of the facts. Your only interest is to seek the truth from the evidence in the case.

You may now proceed to the jury room to begin your deliberations.

**SIGNED** on this **12th** day of **January, 2016.**

_____
Reed O'Connor
UNITED STATES DISTRICT JUDGE